UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

DONALD and SHARON HAMILTON,                    No. 10-14032

                              Debtor(s).
_____/

TIMOTHY HAMILTON,

                              Plaintiff(s),

      v.                                                              A.P. No. 11-1009

DONALD and SHARON HAMILTON,

                              Defendant(s).
_____/

Memorandum After Trial
_____

       Plaintiff Timothy Hamilton is not related to defendants and Chapter 11 debtors Donald and Sharon Hamilton. To avoid confusion, it seems best in this case to refer to them by their shortened given names. No disrespect is intended.

       In this adversary proceeding, Tim seeks a determination that his claims against Don and Sharon are nondischargeable pursuant to § 523(a)(2) of the Bankruptcy Code (fraud), § 523(a)(4) (defalcation), and § 523(a)(6) )conversion. The court finds these allegations to have no merit.

1

Morgan Street

In October 2005, Tim was a practicing attorney and represented Don in a personal injury action. Don was a licensed real estate broker, and had acted as Tim's agent in a real estate transaction. They entered into a written partnership agreement, drafted by Tim, which provided that in return for a payment of $105,375.81 Don and Sharon would quitclaim a 50% interest to Tim in a four-unit rental residence that they owned at 1285 Morgan Street, Sant Rosa, California. The agreement provided that Don and Sharon would manage the property and Tim would provide legal services. Eventually, the property would be sold and the proceeds split.

Don and Sharon used the funds from Tim to pay down to zero a line of credit on the property, though nothing in the agreement required them to do so. They then began using the line of credit to make extensive renovation on the property, again not required, but with Tim's full knowledge and approval.

Tim alleges that Don and Sharon converted $5,000.00 of his payment, which is completely false. Not only was the money theirs to do with as they wished, but they in fact used all of it to pay down the credit line and improve the property even though they were not obligated to do so. The evidence established only that Tim and his counsel did not read a bank statement properly.

Tim alleges that Don and Sharon defrauded him by promising to retire the line of credit and make amortized mortgage payments (as opposed to payments which resulted in some negative amortization). There are two problems with this meritless theory. First, the contract, which Tim drafted, contain no such promises. Second, there is no convincing evidence that they were ever made at all, let alone made with the fraudulent intent necessary to except a debt from discharge. The court finds that at no time did Don or Sharon ever have any intent to defraud Tim, cheat him or steal anything from him.

Tim alleges that as his partners Don and Sharon had a fiduciary duty to account to him for all partnership funds. This is true enough, and Don and Sharon were not able to fully document all of the

expenses associated with the property due to a fire which destroyed much of their records. However, Don and Sharon did produce enough documentation to convince the court that they used the partnership funds properly. While some expenditures lack complete documentation, the court notes that in settlement of a state court lawsuit brought by Tim against Don and Sharon they paid him over $55,000.00. This sum far exceeds anything for which Don and Sharon cannot fully account.

The fact is that Don and Sharon could have used Tim's payment for anything. They decided to use it to first pay down the line of credit, which benefitted Tim, and then use the line of credit to renovate the property, also to Tim's benefit. Nobody anticipated the collapse of the real estate market, which caused Tim's losses.

Belmont Court

In a separate transaction, again pursuant to an agreement drafted by Tim and signed on September 5, 2006, Tim paid Don and Sharon $100,000.00 for a one-half interest in the property at 1921 Belmont Court, Santa Rosa, California. Tim was to assume the existing loan within 45 days thereafter. Tim was to live in the property and pay monthly rent for two years. At the end of two years, Don and Sharon were to repay Tim his $100,000.00 plus seven percent interest.

Don and Sharon never deeded the half interest to Tim. Tim alleges that they never intended to do so and made the representation to Tim order to induce him to pay them the money. There is not a shred of evidence to support this baseless allegation. In Tim's own words, "[A]lthough both parties to the agreement attempted to transfer 50% ownership of the Belmont property as security on the note, this was not done as we discovered the costs to be prohibitive."[1]

Superior Court Settlement

Pursuant to the state court settlement, Tim was to get a deed of trust to specified property. He

---

[1] Tim refers to the September 5, 2006, agreement as a "note."

3

alleges some sort of fraud due to the fact that he was given a deed of trust to an adjoining property. The evidence established that this was a simple mistake on their counsel's part in attaching the wrong legal description. There was no wrongful conduct whatsoever.

For the foregoing reasons, Tim will take nothing by his complaint, which will be dismissed with prejudice. Don and Sharon shall recover their costs of suit.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Don and Sharon shall submit an appropriate form of judgment forthwith.

Dated: September 13, 2011

Alan Jaroslovsky
U.S. Bankruptcy Judge

4